IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:19 CV 113 MOC WCM

| | |
|---|---|
| JEFFREY FIELDS, | ) |
|                     Plaintiff, | ) |
| v. | ) MEMORANDUM AND |
| | ) RECOMMENDATION |
| ANDREW SAUL, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
|                     Defendant. | ) |

This matter is before the Court on the parties' cross motions for summary judgment (Docs. 12, 14), which have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). Following a review of the record, the parties' briefs, and relevant legal authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be granted and the Commissioner's Motion for Summary Judgment be denied.

I. Procedural History

On August 31, 2015, Plaintiff Jeffrey Fields ("Plaintiff") filed an application for disability insurance benefits. Transcript of Administrative Record ("AR"), pp. 185-186. Following denial of Plaintiff's claims on initial review and reconsideration, a hearing was held on May 7, 2018, in Charlotte, North Carolina, where Plaintiff appeared and testified. AR pp. 31-63. Plaintiff

1

was represented by counsel at the hearing.

On August 17, 2018, the Administrative Law Judge ("ALJ") issued an unfavorable decision. AR pp. 12-30. The Appeals Council denied Plaintiff's request for review of that decision and on August 29, 2019, Plaintiff timely filed the instant action. AR pp. 1-6; Doc. 1. Accordingly, the ALJ's decision is the Commissioner's final decision for purposes of judicial review. See 20 C.F.R. § 404.981.

## II. The Five-Step Process

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to apply a five-step sequential evaluation to each claim for benefits. 20 C.F.R. §§ 404.1520; 416.920. In this process, the Commissioner considers each of the following: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or exceed the severity of one or more of the impairments listed in Appendix I of 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age,

2

education, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520, 416.920; Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001); Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (per curiam).

The burden rests on the claimant throughout the first four steps of this five-step process to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work, considering the claimant's RFC, age, education, and past work experience. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

### III. The ALJ's Decision

In her August 17, 2018 Decision, the ALJ found that Plaintiff had the severe impairments of "degenerative joint disease of the hips, degenerative disc disease of the lumbar spine and thoracic spine, obesity and depression." AR p. 17. The ALJ further found that Plaintiff had the RFC to

> perform medium work as defined in 20 CFR 404.1567(c) except he could maintain attention and concentration for at least two hour periods at a time for a normal work day and typical work week; and understand, remember and carry out simple instructions, not necessarily simple, routine or repetitive tasks, meaning SVP 3 or less.

AR p. 20.

Utilizing this RFC, the ALJ found that Plaintiff was unable to perform his past

3

relevant work, but that Plaintiff could perform other work such that Plaintiff was not disabled from June 15, 2014 (the alleged disability onset date) through December 31, 2014 (the date Plaintiff was last insured). AR pp. 23-25.

## IV. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applied the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006) (quoting Mastro, 270 F.3d at 176). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that he is not disabled is supported by substantial evidence in the record, and whether the ALJ reached her decision based on the correct application of the law. Id.

## V. Analysis

Plaintiff asserts two allegations of error. First, Plaintiff argues that the ALJ failed to properly consider medical evidence generated after December 31, 2014, the date Plaintiff was last insured,[1] relative to his peripheral artery disease ("PAD"). Second, Plaintiff argues that the ALJ's decision must be vacated because at the time of the May 7, 2018 hearing, the ALJ "was not appointed by the President, Courts of Law or Head of a Department" and therefore was in violation of the Appointments Clause of the United States Constitution.

### A. Consideration of Retrospective Medical Evidence

Plaintiff argues that the ALJ failed to find at step two that his PAD constituted a severe impairment and erred subsequently when developing Plaintiff's RFC by failing to account for his PAD. Plaintiff asserts that he complained of leg pain and numbness prior to his alleged disability onset date and during the covered period of June 15, 2014 through December 31, 2014 and that medical records created after his date last insured ("DLI") "demonstrate[] that these symptoms and limitations are very likely attributable to [his] PAD." Doc. 13, p. 7.

---

[1] The ALJ found that Plaintiff's earning records showed that he acquired enough coverage to remain insured through December 31, 2014. AR pp. 15 & 17.

5

"To establish eligibility for Social Security disability benefits, a claimant must show that he became disabled before his DLI." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir.2012). "Medical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's DLI" when the evidence permits an "inference of linkage" between a claimant's post-DLI and pre-DLI condition. Id. at 341. "[R]etrospective consideration of evidence is appropriate when the record is not so persuasive as to rule out any linkage of the final condition of the claimant with his earlier symptoms." Bird, 699 F.3d at 341 (internal citations omitted). However, where there is insufficient evidence supporting an inference that a claimant's post-DLI assessment is linked to pre-DLI impairments, the ALJ does not need to give the new assessment retrospective consideration. Id. (citing Johnson v. Barnhart, 434 F.3d 650, 655–56 (4th Cir.2005) (per curiam)); see also Martin v. Saul, No. 1:19-cv-286-MOC, 2020 WL 1914919, at * 5 (W.D.N.C. April 20, 2020) ("Bird requires consideration of evidence created after the date last insured when that evidence permits an inference of linkage back to the claimant's condition as it existed before the date last insured.").

In her August 17, 2018 Decision, the ALJ recognized that Plaintiff's medical records established "longstanding complaints of pain, primarily of the hips and back with pain radiating to the lower extremities and numbness and

6

Case 5:19-cv-00113-MOC-WCM   Document 16   Filed 06/05/20   Page 6 of 14

tingling of the feet." AR p. 21. The ALJ concluded, however, that "while the evidence as of the alleged onset date through date last insured supports the existence of a disorder of the spine, likely degenerative in origin, and degeneration of both hips, the severity of the respective degeneration was no more than mild." AR p. 22. Further, the ALJ found that Plaintiff's medical records after the relevant period revealed "treatment for a number of conditions" including "infected toe/peripheral artery disease" which were "not present prior to the date last insured or if present, were not severe prior to the date last insured." AR p. 21. The ALJ's Decision does not include further discussion of Plaintiff's medical records created after December 31, 2014 as they relate to PAD.

"The Court must ascertain what exactly [PAD] is in order to determine whether or not there is a linkage present." Edwards v. Colvin, No. 5:13-cv-8-RLV, 2015 WL 114296, at * 5 (W.D.N.C. Jan. 8, 2015) (considering the nature and symptoms of lipomyelomeningocele). The Social Security Regulations provide that "peripheral arterial disease" is a form of "peripheral vascular disease" that affects the "arteries…in the extremities, particularly the lower extremities. The usual effect is blockage of the flow of blood…from the heart." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.00(G)(1). The Regulations further state that a claimant with PAD "at more advanced stages" may have pain in the calf at rest or develop ulceration or gangrene. Id.; see also

7

https://www.mayoclinic.org/diseases-conditions/peripheral-artery-disease/symptoms-causes/syc-20350557, last accessed May 29, 2020 (listing symptoms of PAD to include painful cramping in hips, thighs, or calf muscles; leg numbness or weakness; sores on toes, feet, or legs that won't heal; weak pulse in legs or feet).

At the May 7, 2018 hearing, Plaintiff testified that during the relevant period of June 15, 2014 through December 31, 2014, he experienced "burning" in his back and stinging and numbness in his legs. AR p. 44; see also AR p. 46 (testifying that in 2014, Plaintiff could sit for 15 minutes at a time before his feet and legs would go numb, that his legs would "go numb and get wobbly" after standing for ten minutes, and that he had trouble walking). In his briefing, Plaintiff cites to medical records reflecting complaints of leg pain and numbness through the Fall of 2014. See Doc. 13, p. 7.[2] Plaintiff then describes his medical treatment following the last date he was insured, including medical records reflecting an assessment of bilateral leg paresthesia

---

2 Plaintiff cites AR pp. 324-325 (October 8, 2014 treatment record reflecting normal muscle strength and sensation on physical exam but treatment for bilateral leg paresthesia. On physical exam, pain was characterized as "deep and pain on movement" with factors of "rising from seated position and prolonged sitting," Plaintiff's strength, tone, and range of motion testing was "limited – due to pain," and Plaintiff exhibited "antalgic posturing."); p. 329 (October 28, 2014 treatment note reflecting complaints of back and hip pain, antalgic gait on physical exam with testing of strength, tone, and range of motion limited due to pain); pp. 331-332 (November 7, 2014 treatment note reflecting complaints of back pain, joint pain, and decreased range of motion; limited testing due to pain and antalgic gait).

(numbness or burning) in May of 2015,[3] complaints of foot pain in March of 2016,[4] a May 19, 2016 emergency room visit during which PAD was first diagnosed,[5] and multiple subsequent procedures.[6] Doc. 13, pp. 10.

This information indicates that the record "is not so persuasive as to rule out any linkage of the final condition of [Plaintiff] with his earlier symptoms." Bird, 699 F.3d at 341. The medical evidence (specifically records reflecting Plaintiff's pain and numbness) prior to Plaintiff's date last insured provide evidence to link Plaintiff's post-DLI diagnosis of PAD to his pre-DLI symptoms. Therefore, the ALJ's failure to analyze how Plaintiff's post-DLI treatment records related to Plaintiff's PAD was erroneous. See Edwards v. Colvin, 2015 WL 114296, at * 6 (finding that the records were not so persuasive as to rule out the possibility of the onset of a condition prior to the claimant's DLI and, in fact, supported a finding that there likely was a failure to diagnose her rare condition); Booker v. Berryhill, No. 3:16-cv-299-RLV, 2017 WL 2676497 at * 6 (W.D.N.C. June 21, 2017) ("where a medical test is conducted after a claimant's date last insured, the administrative law judge should give retrospective

---

3 AR p. 336.

4 AR pp. 400-401.

5 AR pp. 876-879.

6 AR p. 930 (June 8, 2016 stenting on right lower extremity); p. 1056 (June 14, 2016 right fifth toe amputation); p. 1796 (July 26, 2017 stenting on right); p. 1936 (August 18, 2017 stenting on left lower extremity).

9

consideration to the test results if the test relates to pain and symptoms arising before the date last insured."); Cf. Graham v. Colvin, No. 5:12-cv-174-RLV, 2015 WL 114277, at * 4 (W.D.N.C. Jan. 8, 2015) (finding retrospective consideration of post-DLI evidence related to claimant's tremors was not necessary because claimant "did not complain of tremors until after her DLI, there was "no meaningful corroboration aside from her own statement that she quit work in March of 2007 due in part to her tremors," and none of claimant's physicians offered a retrospective diagnosis or opined that her tremors existed prior to her DLI and therefore "the record [was] persuasive enough to rule out linkage.").

The Commissioner argues that "Plaintiff's PAD diagnosis…was made following podiatric surgery on April 28, 2016, well *after* DLI. Therefore, it was not a medically determinable impairment *before* DLI." Doc. 15, p. 9 (emphasis in original). This position, however, demands more substantial medical evidence pre-DLI than is required under current caselaw. For example, in Bird, the Fourth Circuit held that the ALJ erred by failing to consider medical evidence created 14-months after the claimant's DLI that diagnosed the claimant with Post Traumatic Stress Disorder. See also Edwards v. Colvin, No. 5:13-cv-8-RLV, 2015 WL 114296, at * 5 (W.D.N.C. Jan. 8, 2015) (rejecting Commissioner's argument that objective evidence was necessary to establish the existence of a medically determinable impairment prior to plaintiff's DLI

10

"because it would eviscerate the holding in Bird" and explaining that Bird "himself had no objective evidence of PTSD created prior to his DLI. In fact, this was the primary reason the ALJ found Bird's PTSD to be not severe.").

Accordingly, the undersigned will recommend that the matter be remanded on this basis.

### B. Appointments Clause

Plaintiff also contends that "[b]ecause the ALJ who conducted the hearing in this case was not properly appointed under the Constitution's Appointments Clause at the time of the hearing, she did not have legal authority to preside over this matter." Doc. 13, p. 15. In response, the Commissioner argues that Plaintiff has forfeited his Appointments Clause claim because he failed to raise the issue at any point in the administrative proceedings. Doc. 15, p. 10.

Plaintiff recognizes that the Fourth Circuit has not ruled on the question of whether exhaustion is required for Appointments Clause challenges and urges this Court to follow the approach found in Cirko v. Comm'r of Social Security, 948 F.3d 148 (3d Cir. 2020), which held that administrative exhaustion was not required.

Courts in this district, however, have found that plaintiffs who have failed to raise Appointments Clause challenges before the Commissioner have forfeited those challenges. Sweat v. Berryhill, No. 1:18-cv-42-GCM, 2019 WL

1856964, at * 1 (W.D.N.C. April 24, 2019) (considering applicability of Lucia v. SEC, 138 S.Ct. 2044, 2055, 201 L.Ed.2d 464 (2018) and citing Whiteside v. Berryhill, 1:18-cv-00176-FDW, 2019 WL 1639936 (W.D.N.C. Apr. 16, 2019); Jackson v. Berryhill, 1:18-cv-00003-RJC, 2019 WL 1332377 (W.D.N.C. Mar. 25, 2019); Britt v. Berryhill, No. 1:18-cv-00030-FDW, 2018 WL 6268211, at *2 (W.D.N.C. Nov. 30, 2018); Garrison v. Berryhill, No. 1:17-cv-00302-FDW, 2018 WL 4924554, at *2 (W.D.N.C. Oct. 10, 2018)); see also Wampler v. Saul, No 1:19-cv-00092-MOC, 2019 WL 6404403, at *6 (W.D.N.C. Nov. 27, 2019) ("Plaintiff's failure to assert a challenge to the ALJ's appointment before the agency at any point in the administrative proceedings forfeited his Appointments Clause claim"); Lamb v. Berryhill, No. 1:18-cv-202-MOC, 2019 WL 4197182, at * 2-3 (W.D.N.C. Sept. 4, 2019); Weatherman v. Berryhill, No. 5:18-cv-45-MOC, 2018 WL 6492957, at * 4 (W.D.N.C. Dec. 10, 2018).

Further, two recent decisions from this district have declined to follow Cirko. See Bailey v. Saul, No. 1:18-cv-371-FDW, 2020 WL 1429240 , at * 4 (W.D.N.C. March 19, 2020) (citing Cirko and noting that "[t]he Third Circuit alone allows an Appointments Clause claim to be raised at the first time at the district court level."); Petty v. Saul, No. 1:19-cv-12-FDW, 2020 WL 1441436 (W.D.N.C. March 19, 2020), appeal pending (same). In both decisions, the court explained that "most of the district courts who have ruled on the issue have rejected Appointments Clause claims that were not raised at the

administrative level." Bailey, 2020 WL 1429240 at * 5 (collecting cases); Petty, 2020 WL 1441436, at * 8 (collecting cases). In both Bailey and Petty, the court reasoned that requiring administrative exhaustion "is further supported by the SSA's regulations requiring claimants to raise *all* issues, including objections to the ALJ conducting the hearing, at the administrative level." Id. (emphasis in Bailey and Petty) (citing 20 CFR § 404.933(a)(2) (Requiring a claimant to submit in writing "[t]he reasons [the claimant] disagree[s] with the previous determination or decision.") & 20 CFR § 404.940 ("If you object to the administrative law judge who will conduct the hearing, you must notify the administrative law judge at your earliest opportunity.")).

Accordingly, the undersigned concludes that Plaintiff's Appointments Clause challenge to the ALJ's decision does not require remand.

## VI. Recommendation

Considering the foregoing, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Doc. 12) be granted and that the Commissioner's Motion for Summary Judgment (Doc. 14) be denied.

Signed: June 5, 2020

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).